# 24-962

United States Court of Appeal
for the Second Circuit

Robert LaRose
Plaintiff-Appellant
v.
American Medical Response of Connecticut, Inc.
Defendant-Appellee

Case Number 3:21-cv-948(VDO)

Appeal from the District Court's Memorandum and Order Granting
Defendant's Motion for Summary Judgment on February 23, 2024, and
entry of Judgment for the Defendant on February 26, 2024.

Plaintiff-Appellant's Initial Brief

Appearing for the Plaintiff-Appellant:

Peter D. Goselin
The Law Office of Peter Goselin
P.O. Box 331313
Hartford, CT 06133
860-580-9675

## I.    Table of Contents

I.   Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV. Issues Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.   Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

    A.    Facts Relevant to the Issues Presented for Review . . . . . . . . . . . . . . . 6

    B.    Procedural History Relevant to the Issues Presented for Review . . . . . 7

    C.    Rulings Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VI.  Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VII. Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    B.    The legal standard applicable to claims of unlaw interference with
         FMLArights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    C.    Evidence ignored by the District Court shows the plaintiff made out a
         prima facie case of FMLA interference . . . . . . . . . . . . . . . . . . . . . . . . 14

    D.    There are disputed material facts as to Retallick's reason for refusing to
         reinstate Robert LaRose from FMLA . . . . . . . . . . . . . . . . . . . . . . . . 19

VIII. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IX.  Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Addendum

## II.  Table of Authorities

### A.  Cases

*Blackett v. Whole Foods Mkt. Grp., Inc.*, 2017 WL 1138126 (D. Conn. 2017) . . . 13, 14, 18, 19

*Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351 (S.D.N.Y. 2016) . . . .14

*Garcia v. Hartford Police Dep't*, 706 F.3d 120 (2d Cir. 2013) (*per curiam*). . . .12

*Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415 (2d Cir. 2016) . . . . . . . . . . . 13

*Greenberg v. State Univ. Hosp.,* 19-3570 (2nd Cir. 2020) . . . . . . . . . . . . . . . . .14

*Potenza v. City of New York*, 365 F.3d 165 (2d Cir. 2004) . . . . . . . . . . . . . . . . 13

*Schimkewitsch v. N.Y. Inst. of Tech.*, 23-1022 (2nd Cir. Aug 14, 2024) . . . . . . 12

*Sista v. Cdc Ixis North America, Inc.*, 445 F.3d 161 (2nd Cir. 2006) . . . . . . . . . 12, 13, 14, 19

*Woods v. Start Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158 (2nd Cir. 2017) . . . 12, 13, 19

### B.  Statutes

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 U.S.C. §260*l, et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 12

29 U.S.C. §2614 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

29 U.S.C.§2615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

2

42 U.S.C. §12101 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*

### C.   Regulations

29 CFR §825.300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11, 18, 22

29 CFR §825.312 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 22

## III.  Jurisdictional Statement

The District Court had federal question jurisdiction over this action under 28 U.S.C. §1331 because this case arose under the Family and Medical Leave Act, 29 U.S.C. §2601, et seq. This appeal is from the final judgment entered by the District Court on February 26, 2024, pursuant to its Memorandum and Order Granting Defendant's Motion for Summary Judgment entered on February 23, 2024. Following the District Court's grant of Plaintiff's motion to extend time, Plaintiff timely filed a Notice of Appeal on April 8, 2024. This Court has jurisdiction of the Plaintiff's appeal pursuant to 28 U.S.C. §1291.

## IV.  Issues Presented for Review

1.     Did the District Court err in granting summary judgment for the defendant on the plaintiff's claim of interference with his rights under the Family and Medical Leave Act, where the District Court ignored evidence that the defendant refused to reinstate the plaintiff in February 2019, in or about the time of the expiration of his FMLA medical leave?

2.     Did the District Court err in granting summary judgment for the defendant on the plaintiff's claim of interference with his rights under the Family and Medical Leave Act, where the defendant failed to provide the plaintiff with at least five (5) days notice of the expiration of his available leave time, as required by 29 C.F.R. §825.300(d)(5) and such failure was to the plaintiff's prejudice?

3.     Did the District Court err in granting summary judgment for the defendant on the plaintiff's claim of interference with his rights under the Family and Medical Leave Act, where there are disputed material facts as to the reason for the defendant's refusal to reinstate the plaintiff from his FMLA medical leave?

## V.     Statement of the Case

### A.     Facts Relevant to the Issues Presented for Review

#### 1.     *Robert LaRose's Work History and Duties at AMR*

Plaintiff Robert LaRose began his employment with defendant AMR in April 2006 as a part time paramedic. (Def. Local Rule 56(a)(1) Statement of Undisputed Material Facts (hereinafter, "Def. Facts") ¶ 2; Appx. 023) LaRose's job duties as paramedic included emergency treatment and transportation of sick and injured individuals. (Def. Facts ¶ 3; Appx. 023) In June 2006, LaRose applied for and became a full-time paramedic at AMR. (Def. Facts ¶ 4; Appx. 024)

LaRose was promoted to a Field Supervisor position in August 2011, and to an Operations Supervisor position in July 26, 2012. (Def. Facts ¶¶ 18, 19; Appx. 025-026) In these positions, LaRose was responsible for the coordination and supervision of daily operations. (Def. Facts ¶ 20; Appx. 026) LaRose reported to Mark Hughson, then-Senior Operations Supervisor, and Robert Retallick, General Manager at the time. (Id.) In February 2016, LaRose became Senior Operations Supervisor. (Def. Facts ¶ 21; Appx. 026)

#### 2.     *LaRose's FMLA Leave and AMR's Refusal to Reinstate*

On or about October 16, 2018, LaRose went out on an FMLA-protected medical leave of absence to have surgery and to recover from surgery due to a neck

6

injury. (Def. Facts ¶27; Appx. 026) During his FMLA leave, LaRose checked in every one to one and one-half weeks with his supervisor, Robert Retallick. (Pl.Ex. 2, 166-68; Appx. 417-419)

On or about February 22, 2019, Retallick sent a letter to LaRose informing him that his FMLA leave had expired on February 15. Shortly before or after that letter, LaRose visited AMR's offices. (Pl.Ex. 2, 180-182; Appx. 425-427) (Def.Ex. 24; Appx. 259) LaRose initiated a conversation with Retallick, telling him that LaRose could come back to work from FMLA immediately subject only to a lifting restriction. (Id.) Retallick responded, "You have to come back 100 percent or not at all." (Id.)

Instead of reinstating LaRose, Retallick placed him on an extended non-FMLA leave. (Def.Ex. 25; Appx. 261) On May 6, 2019, Human Resources Generalist Alison Carapezza sent LaRose a letter stating that he must return to work, if medically cleared, by May 14, 2019 or risk the termination of his employment. (Id.) LaRose returned to work as a *per diem* EMT until his termination on March 13, 2020. (Def.'s 56(a) ¶ 55; Appx. 030)

### B.    Procedural History Relevant to the Issues Presented for Review

The Plaintiff, Robert LaRose, commenced this action against his former employer, Defendant American Medical Response of Connecticut, Inc., with a

7

Complaint filed on July 9, 2021. (Complaint, Appx. 001) The Complaint alleged, *inter alia,* that the Defendant had interfered with the Plaintiff's rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601, et seq. The case was assigned to Judge Robert N. Chatigny. On August 19, 2022, the Defendant moved for summary judgment, (Def. Motion for Summary Judgment; Appx. 020) The parties completed their briefing of the motion on November 17, 2022. (Def. Reply; Appx. 433)

On October 23, 2023, the case was transferred to Judge Vernon D. Oliver. On February 23, 2024, Judge Oliver issued an Order and Memorandum Granting Defendant's Motion for Summary Judgment. (Memorandum and Order; Appx. 514; Addendum 1) On February 26, 2024, judgment was entered for the Defendant. (Judgment; Appx. 528; Addendum 15) This appeal followed.[1] (Notice of Appeal; Appx. 529)

### C. Rulings Presented for Review

LaRose seeks review of Judge Oliver's Order and Memorandum Granting Defendant's Motion for Summary Judgment (Appx. 514; Addendum 1) as to

---

[1] The Plaintiff's Complaint included claims under the Americans with Disabilities Act as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADA), 42 U.S.C. §12101 *et seq*. The Plaintiff does not appeal the District Court's grant of summary judgment as to those claims.

8

LaRose's claim of FMLA interference, and Judge Oliver's Order of Judgment

(Appx. 528; Addendum 16).

## VI.  Summary of the Argument

Plaintiff Robert LaRose was employed as a Senior Operations Supervisor for AMR's ambulance operations in Connecticut in Fall 2018, when he went out on an approved FMLA medical leave. The FMLA medical leave expired on or about February 15, 2019. Defendant AMR did not give LaRose notice of the expiration until a letter from LaRose's supervisor, Robert Retallick, dated February 22, 2019.

A reasonable juror could find that shortly before or after Retallick's letter, LaRose visited the AMR offices and spoke with Retallick, requesting reinstatement to his position subject only to a lifting restriction. Retallick responded, "You have to come back 100 percent or not at all." LaRose was not reinstated, but remained on an extended non-FMLA medical leave until May 2019, when AMR re-hired him as a *per diem* EMT – the position he held when he was employed by AMR in 2006.

District Court Judge Vernon D. Oliver granted AMR's motion for summary judgment on all of LaRose's claims, including his claim of FMLA interference. In his memorandum, Judge Oliver ignored evidence of LaRose's February 2019 request for reinstatement and AMR's denial of that request. Judge Oliver found that "no reasonable factfinder can conclude that any alleged misconduct by AMR after February 15, 2019, the date Plaintiff's FMLA leave expired, constitutes interference with Plaintiff's right to reinstatement."

10

LaRose asserts the timeliness of his request for reinstatement is a disputed material fact, or if his request was untimely that it was due to AMR's failure to give notice of the expiration of his leave as required by FMLA regulation 29 CFR §825.300, and that he suffered prejudice thereby. Therefore, Judge Oliver erred in failing to find that LaRose had made out a *prima facie* case of FMLA interference.

Because Judge Oliver failed to consider evidence that LaRose made a timely request for reinstatement, he further erred by failing to address whether Retallick's refusal to reinstate constituted interference with LaRose's FMLA rights. The evidence in the record would permit a reasonable juror to find that lifting was, at most, a minor part of the job of Senior Operations Supervisor, that AMR's later explanation that Retallick refused LaRose's request for reinstatement because lifting is an "essential function" of the Senior Operations Supervisor position is unsupported by any evidence, and that AMR did not issue a designation letter requiring LaRose to provide medical certification that he could perform a list of essential functions before returning to work, pursuant to 29 CFR §825.312.

11

## VII. Argument

### A. Standard of Review

This Court "review[s] de novo a district court's grant of, and procedural errors made in the process of granting, summary judgment, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Schimkewitsch v. N.Y. Inst. of Tech.*, 23-1022 (2nd Cir. Aug 14, 2024), quoting *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126-27 (2d Cir. 2013) (*per curiam*).

### B. The legal standard applicable to claims of unlaw interference with FMLA rights

The Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. , provides broad protections to employees who need to take time away from work to deal with serious health conditions of the employee or her family. An employee has the right to return to the position she held before taking leave, or to an "equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." Id. § 2614(a)(1)(B). The FMLA also "creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction should that employer interfere with, restrain, or deny the exercise of FMLA rights." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (internal quotation marks omitted).

*Woods v. Start Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 165-166 (2nd Cir. 2017).

A plaintiff may seek relief for a violation of rights under the FMLA under either a theory of interference with rights or retaliation for an exercise of rights. *Id.,*

12

at 166. The former, applicable to the case at bar, arises when an employer "has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." See *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). *Id*.

In such a case, "[n]o scheme shifting the burden of production back and forth is required." *Sista v. Cdc Ixis North America, Inc.*, 445 F.3d 161, 176 (2nd Cir. 2006), quoting *Potenza v. City of New York*, 365 F.3d 165, 167-168 (2d Cir. 2004) (internal citations omitted).[2] As Judge Oliver himself observed in his ruling on summary judgment here, "An employer may be held liable for an interference claim 'even if [it] never subjectively intended to interfere with [the] plaintiff's FMLA rights.'" (Order, p. 12, quoting, *Blackett v. Whole Foods Mkt. Grp., Inc.*, 2017 WL 1138126, at *6 (D. Conn. 2017); Appx. 525; Addendum 12).

> To establish a prima facie case of interference with FMLA rights, a plaintiff must demonstrate that: (1) "she is an eligible employee under the FMLA"; (2) "the defendant is an employer as defined by the FMLA"; (3) "she was entitled to take leave under the FMLA"; (4) "she gave notice to the defendant of her intention to take leave"; and (5) "she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

---

[2]  In *Woods,* supra, the Second Circuit determined that FMLA interference claims arise under 29 U.S.C. §2615(a)(1), and that the appropriate causation test is "motivating factor" rather than "but for," because "Given the sweeping scope of §2615(a)(1)'s prohibition—"It shall be unlawful ...to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right"—and the absence of *any* indication of a causation standard, the Labor Department reasonably construed §2615(a)(1) to prohibit using the exercise of FMLA rights at all in making employment decisions." 864 F.3d, at 169 (*emphasis in original*).

*Greenberg v. State Univ. Hosp.* 19-3570 (2nd Cir. 2020). Where a *prima facie* case is shown, "the plaintiff need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both . . ." *Sista*, supra, at 175-176.

Courts in this circuit have held "The right to reinstatement is 'a benefit at the crux of the FMLA's provisions,' *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 363 (S.D.N.Y. 2016), and an employer who fails to reinstate an eligible employee may be liable for FMLA interference. See 29 U.S.C. § 2615(a)(1)." *Blackett v. Whole Foods Mkt. Grp., Inc.*, No. 3:14-cv-01896 (D. Conn. 2017).

As demonstrated below, the record evidence is such that the District Court should have found that LaRose requested reinstatement, and that there are disputed material facts as to the truth of AMR's explanation for denying his request.

### C. Evidence ignored by the District Court – shows the plaintiff made out a *prima facie* case of FMLA interference

There is no dispute that the plaintiff meets the first four of the five criteria set out above to establish his *prima facie* case of FMLA interference. The parties agree Robert LaRose was eligible for FMLA leave, AMR is an employer subject to the

14

FMLA, and LaRose gave notice of and did take FMLA-protected medical leaves of absence from October 18, 2018, to January 9, 2019, and again beginning on January 18, 2019, until his FMLA expired on or about February 15, 2019.

Thus, to complete his *prima facie* case, LaRose must show only that he was denied benefits to which he was entitled under the FMLA. This he can easily do because AMR refused to reinstate LaRose when he sought to return to his position as Senior Operations Supervisor in February 2019. (Appx. 425-427) Several months later, after LaRose had exhausted extended medical leave under AMR's policies, AMR offered to return him to work as a *per diem* EMT – the position at which LaRose had commenced his employment with AMR thirteen years earlier. (Appx. 030) That position, indisputably, was not an "equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(B).

In Judge Oliver's Order grant of summary judgment, he accepts AMR's assertion that because LaRose "'was not on FMLA leave when th[e] decision [not to hold open his position] was made, he was provided all leave to which he was entitled (plus more), and his employment continued.'" (Appx. 525-526; Addendum 12-13) However, the evidence shows that LaRose made a request for reinstatement which AMR denied, and that either his request was timely or, if untimely, was the

result of prejudice LaRose suffered due to AMR's failure to comply with FMLA notice requirements.

LaRose testified in his deposition that in February 2019 he had a conversation with his manager, Robert Retallick, in which he requested and was denied reinstatement. (Appx. 425-427) LaRose did not remember the date of the conversation, but testified that it took place shortly before or after he received a letter from Retallick informing him that his FMLA leave had expired as of February 15, 2019. (Id.) The letter was dated February 22, 2019. (Id.)

LaRose testified that he went to AMR's offices and spoke with Retallick about reinstatement. (Id.) LaRose told Retallick that he could return from FMLA leave to his position as Senior Operations Supervisor immediately, subject only to a lifting restriction. (Id.) LaRose testified that Retallick immediately responded, "You have to come back 100 percent or not at all." (Id.).

Even if the evidence of the February 2019 conversation were disputed by the defendant (in fact, it has presented no relevant contradictory evidence), Judge Oliver, in applying the long-established standard applicable to a motion for summary judgment, should have construed it in the light most favorable to the plaintiff. Instead, Judge Oliver *ignored* the plaintiff's evidence of his request for reinstatement altogether.

16

Judge Oliver cites *Wanamaker v. Town of Westport Bd. of Educ.*, 11 F.Supp.3d 51, 71 (D. Conn. 2014) for the proposition that "Plaintiff's right to reinstatement under the FMLA expired when his FMLA leave expired." (Addendum 13-14) Therefore, "no reasonable factfinder can conclude that any alleged misconduct by AMR after February 15, 2019, the date Plaintiff's FMLA leave expired, constitutes interference with Plaintiff's right to reinstatement."

However, in *Wanamaker*, there was no factual dispute that the plaintiff remained unable to return to work, was granted extended medical leave, and did not request reinstatement until almost a year later. 11 F.Supp.3d at 59-64, *passim*. By contrast, the unrebutted evidence here shows that LaRose requested to return to work subject only to a lifting restriction, and that his attempt to return was either a few days *before* or a few days *after* his FMLA expired. Thus, there is sufficient evidence permitting a reasonable juror to find that LaRose made a timely request for reinstatement, which AMR denied.

Alternatively, even if Judge Oliver were unpersuaded that the evidence cited above established a disputed material fact whether LaRose requested and was denied reinstatement by or before February 15, he should have found that LaRose suffered prejudice in making a timely request for reinstatement due to AMR's failure to comply with FMLA notice requirements.

17

Department of Labor regulations require an employer to provide an employee five days' advance notice of changes to his eligibility. See, 29 CFR §825.300(d)(5). District Court Judge Meyer observed in *Blackett*, supra, that "An employer's '[f]ailure to follow the [FMLA] notice requirements [of 29 CFR §825.300] may constitute an interference with . . . the exercise of an employee's FMLA rights,' 29 CFR § 825.300(e), so long as that failure results in a prejudice to the employee." *Blackett*, supra, citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90-91 (2002).

In *Blackett*, Judge Meyer found that an employee suffered prejudice from an employer's failure to comply with FMLA notice requirements, including "by not providing written notice within five business days of a change to plaintiff's designation notice, such as when plaintiff would exhaust his FMLA leave." *Id.* The violation prejudiced the employee because "a reasonable jury could conclude that plaintiff would have attempted to structure his leaves in order to preserve his right to reinstatement." *Id.*

Here, in a letter dated February 22, 2019, AMR notified LaRose of the expiration of his FMLA benefits effective February 15, a full week earlier. A reasonable juror could find that even if LaRose's request for reinstatement were untimely on its face, he was prejudiced by AMR's failure to provide him with at

18

least five days' advance notice that his entitlement to FMLA leave would soon expire, as required by FMLA regulations.

Whether premised solely on LaRose's testimony or on AMR's violation of FMLA notice requirements, the evidence shows that it was error for Judge Oliver to completely overlook LaRose's request and AMR's rejection of his request for reinstatement. The District Court should have found that LaRose established the fifth and final element of his *prima facie* case of FMLA interference and proceeded to the question whether LaRose's exercise of rights under the FMLA constituted a negative factor in AMR's denial of reinstatement.

### D. There are disputed material facts as to Retallick's reason for refusing to reinstate Robert LaRose from FMLA

As discussed above, a plaintiff claiming FMLA interference who has made out a *prima facie* case "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Sista,* supra, at 175-176. Department of Labor regulations enforcing the FMLA "prohibit using the exercise of FMLA rights at all in making employment decisions." *Woods v. Start Treatment & Recovery Ctrs., Inc.*, supra, at 169. Indeed, "[a]n employer may be held liable for an interference claim 'even if [it] never subjectively intended to interfere with [the] plaintiff's FMLA rights.'" *Blackett v. Whole Foods Mkt. Grp., Inc.*, supra at *6.

19

Judge Oliver's grant of summary judgment to AMR on LaRose's FMLA interference claim ignores the evidence of Robert LaRose's conversation with Robert Retallick in AMR's offices in February 2019; therefore the District Court does not address whether Retallick refused LaRose's reinstatement for reasons relating to his exercise of FMLA rights. As set out below, the evidence would permit a reasonable juror to find that Retallick's rejection of LaRose's request for reinstatement was due to the false assertion that an employee could not return from FMLA medical leave unless they were "100 percent."

First, despite AMR's assertions, there is literally no evidence in the record that Retallick refused to reinstate Robert LaRose to the position of Senior Operations Supervisor in February 2019 because of LaRose's inability to perform an essential function of the job. AMR has provided no affidavit, no deposition testimony, and no email, memoranda, or letters authored by Retallick giving that as his reason.

The *only* evidence of AMR's response to LaRose's request for reinstatement is his sworn testimony about his February 2019 conversation with Robert Retallick in AMR's offices:

> While I was there, I had a discussion with Rob about my leave, and I told him I could come back tomorrow if I -- you know, if I didn't have to lift anything. I could obviously do my desk job. And he told me, "You have to come back 100 percent or not at all."

20

(Appx. 425-427). From this evidence alone, and especially considering Retallick's apparent disinterest in knowing the extent of LaRose's lifting restrictions, in any time table for LaRose's return without such restrictions, or in disclosing to LaRose what it meant to be able to "come back 100 percent or not at all," a reasonable juror could find that Retallick intended to and did prevent LaRose from returning from FMLA medical leave to his position as Senior Operations Supervisor, contrary to LaRose's legal right to do so.

Even if a factfinder were to conclude that Retallick's "100 percent or not at all" was substantively the same as AMR's claim that LaRose's lifting restriction reflected his inability to perform an essential function of the job, there remains a material factual dispute precluding summary judgment. LaRose testified that lifting "was not a very large part of the job," and that the sole circumstances in which a Senior Operations Supervisor would be required to lift was "In times of extreme busyness, you know, I'm – very occasionally, we would get on the ambulance and go to a call . . ." (Appx. 429).

In its summary judgment papers, AMR does not provide a job description for Senior Operations Supervisor that includes a list of essential functions of that position. AMR asserts that language in a collective bargaining agreement regarding

21

lifting supports its position, but there is no evidence that LaRose, as a Senior

Operations Supervisor, was covered by that union contract. (Appx. 436-437)

Finally, if AMR were concerned about ensuring that LaRose would be able to

meet lifting requirements as a precondition for reinstatement from FMLA, it could

have provided LaRose with a fitness-for-duty certification, as described in the

Department of Labor's FMLA regulations:

> An employer may seek a fitness-for-duty certification only with
> regard to the particular health condition that caused the employee's
> need for FMLA leave. The certification from the employee's health
> care provider must certify that the employee is able to resume work.
> Additionally, an employer may require that the certification
> specifically address the employee's ability to perform the essential
> functions of the employee's job.

29 CFR §825.312(b). However, for an employer to require such a certification it

must provide a list of the essential functions of the job in a "designation letter" that

apprises the employee of the requiremnts of their FMLA medical leave, pursuant to

29 CFR §825.300(d). As discussed, supra, with respect to LaRose's exhaustion of

FMLA, AMR never provided a designation letter. Its failure to do so would further

support a reasonable juror's finding that, like Retallick's "100 percent or not at

all," AMR's reliance on "essential functions" was merely a vehicle for preventing

LaRose from being reinstated.

22

Although Judge Oliver never got to the question of AMR's motivation for denying LaRose's request for reinstatement in February 2019, there is disputed evidence that its reason was – as it stated only in litigation – that LaRose could not perform the essential functions of the job of Senior Operations Supervisor. The Court should find that the evidence precludes summary judgment on LaRose's FMLA interference claim.

## VIII. Conclusion

In ruling on AMR's motion for summary judgment as to plaintiff Robert LaRose's claim of FMLA interference, the District Court ignored evidence of LaRose's request for reinstatement and defendant AMR's refusal to reinstate, and failed to make a finding that there are material facts in dispute as to the reason for AMR's refusal. Therefore, LaRose respectfully requests that, as to his claim for FMLA interference, the Court find that disputed material facts preclude summary judgment; or alternatively, that the Court remand this matter to Judge Oliver for further proceedings.

## IX.   Certificate of Compliance

This document complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this

document has been prepared in a proportionally spaced typeface using LibreOffice

24.2.0.3 in 14 pt. Times New Roman. The word count is  4577.


_/ s / Peter D. Goselin_
**Attorney for Plaintiff-Appellant**
**Robert LaRose**

Dated: 10.14.2024

_____

# 24-962

United States Court of Appeal
for the Second Circuit

Robert LaRose
Plaintiff-Appellant
v.
American Medical Response of Connecticut, Inc.
Defendant-Appellee

Case Number 3:21-cv-948(VDO)

Addendum

Prepared by:
Peter D. Goselin
The Law Office of Peter Goselin
P.O. Box 331313
Hartford, CT 06133
860-580-9675

# Addendum

## Table of Contents

Memorandum and Order Granting Defendant's Motion for Summary Judgment . . . . 01

Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

28 U.S.C. §1291 Final decisions of district courts . . . . . . . . . . . . . . . . . . . . . . . .16

28 U.S.C. §1331 Federal question . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

29 U.S.C. §2614 FMLA Employment and benefits protection . . . . . . . . . . . . . . . . . 22

29 U.S.C. §2615 FMLA Prohibited Acts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

29 CFR §825.300 Employer notice requirements (FMLA) . . . . . . . . . . . . . . . . . . . 27

29 CFR §825.312 Fitness-for-duty Certification (FMLA) . . . . . . . . . . . . . . . . . . . . 33

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------- x

ROBERT LAROSE,                                   :
                                                 :
                          Plaintiff,             :     **MEMORANDUM &**
                                                 :     **ORDER GRANTING**
         -against-                               :     **DEFENDANT'S MOTION**
                                                 :     **FOR SUMMARY**
AMERICAN MEDICAL RESPONSE OF                     :     **JUDGMENT**
CONNECTICUT, INC.,                               :
                                                 :     3:21-CV-00948 (VDO)
                          Defendant.             x
-------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

In this employment action, Plaintiff Robert LaRose alleges that his former employer, American Medical Response of Connecticut, Inc. ("AMR" or "Defendant"), discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and interfered with his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Defendant seeks summary judgment with respect to both claims.

For the reasons set forth below, the defendant's motion for summary judgment is **GRANTED**.

## I. <u>BACKGROUND</u>

### A. Factual Background

The following facts are taken from Defendant's Local Rule 56(a)1 Statement of Undisputed Material Facts ("Def.'s 56(a)," ECF No. 37), Plaintiff's Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment ("Pl.'s 56(a)," ECF No. 45-1), and the record. The facts are recounted "in the light most favorable to" Plaintiff, the non-movant.

001

*Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 345 (2d Cir. 2021). The facts as described below are in dispute only to the extent indicated.[1]

Plaintiff was hired by AMR as a part-time paramedic in April 2006, and became a full-time paramedic in June 2006. (Def.'s 56(a) ¶¶ 2, 3, 4.) Plaintiff's supervisors at AMR were Mark Hughson, Senior Operations Supervisor, and Robert Retallick, General Manager. (*Id.* ¶ 5.) After applying for a Field Supervisor position in August 2011, Plaintiff assumed the position of Operations Supervisor on July 26, 2012. (*Id.* ¶¶ 18, 19.) He became Senior Operations Supervisor in February 2016. (*Id.* ¶ 21.)

### 1.    Plaintiff's Leaves of Absence

In 2010, Plaintiff took leave approved under the FMLA to take care of a sick son, and received all leave to which he was entitled under the FMLA. (*Id.* ¶¶ 22, 25.) Plaintiff began experiencing pain in his neck and tingling in his arm and hand in or around August 2018. (Compl., ECF No. 1, ¶ 14.) Plaintiff was diagnosed with a herniated desk and took a second leave of absence approved under the FMLA from October 16, 2018 to January 6, 2019, which amounted to a total of twelve weeks, for surgery on his neck. (Def.'s 56(a) ¶ 27; Compl. ¶¶ 14,

---

[1] Where the parties "identify disputed facts but with semantic objections only or by asserting irrelevant facts . . . which do not actually challenge the factual substance described in the relevant paragraphs, the Court will not consider them as creating disputes of fact." *N.J. v. N.Y.C. Dep't of Educ.*, No. 18-CV-6173, 2021 WL 965323, at *2 n.1 (S.D.N.Y. Mar. 15, 2021); *see also Scanlon v. Town of Greenwich*, 605 F. Supp. 3d 344, 351 (D. Conn. 2022) (finding that plaintiff's 56(a)2 Statement "improperly interjects arguments and/or immaterial facts in response to facts asserted by Defendant, without specifically controverting those facts"); *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (deeming admitted Rule 56(a)1 Statements where plaintiff responded with conclusory allegations, speculation, conjecture or legal arguments).

Where possible, the Court has relied on the undisputed facts in the parties' 56(a) submissions. However, direct citations to the record have also been used where relevant facts were not included in any of the parties' statements of material facts, or where the parties did not accurately characterize the record.

15.) Following his leave, Plaintiff returned to his position as Senior Operations Supervisor and

resumed his regular duties. (Def.'s 56(a) ¶ 30; Pl. Dep., ECF No. 38-1, at 44:7-18.) Twelve

days later, on January 18, 2019, Plaintiff began a third leave after falling on ice and hurting

his left shoulder. (Def.'s 56(a) ¶¶ 31, 32.) Plaintiff received all leave to which he entitled under

the FMLA and exhausted all protected leave on February 15, 2019, at which point he was

authorized to take an extended leave of absence beyond February 15, 2019 pursuant to AMR

policy. (*Id.* ¶ 34.) Plaintiff was advised by his treater to remain out of work until February 25,

2019. (Pl.'s 56(a) ¶ 27.) However, Plaintiff was scheduled to have shoulder surgery on March

4, 2019 and would not be able to return to work for at least two to three months. (ECF No. 38-

2 at 3, 5.)

### 2.      Plaintiff's Return to AMR and Termination

After Plaintiff had exhausted his protected leave, he received a letter from Retallick on

February 22, 2019 stating that Plaintiff had exhausted all available FMLA time, that Plaintiff's

continued absence was not protected under the law, and that AMR was no longer able to hold

the Senior Operations Supervisor position open for Plaintiff given that AMR did not know if

and when Plaintiff would return to work. (Def.'s 56(a) ¶¶ 35, 36; ECF No. 38-1 at 204.) On

May 6, 2019, AMR sent Plaintiff another letter reminding him that AMR provided him with

an extended leave of absence under company policy and stating that he needed to return to

work, if medically cleared, by May 14, 2019, or risk termination of his employment. (Def.'s

56(a) ¶ 43; ECF No. 38-1 at 206.)

Plaintiff was authorized by his medical provider to return to "full duty" work starting

on May 14, 2019, and he accepted AMR's offer to work as a per diem paramedic starting on

June 8, 2019. (Def.'s 56(a) ¶¶ 45, 46; ECF No. 38-1 at 208, 210.) Pursuant to the Collective

**003**

Bargaining Agreement ("CBA") applicable to Plaintiff, he was required to work at least one shift per week as a per diem employee. (Def.'s 56(a) ¶ 51; ECF No. 38-1 at 235.) On September 25, 2019, Plaintiff received a written warning for failing to report to work that day. (ECF No. 38-1 at 213.) Plaintiff repeatedly failed to comply with the minimum shift requirements required by the CBA, and his employment with AMR was terminated on March 13, 2020 as a result. (Def.'s 56(a) ¶¶ 50, 55.)

### B. Procedural History

On or about December 4, 2020,[2] Plaintiff filed a complaint with the Equal Employment Opportunities Commission, alleging that Defendant engaged in discrimination in violation of the ADA. (Compl. ¶ 40.) He was issued a Right to Sue letter on April 11, 2021, and filed the instant action on July 9, 2021. (*Id*.) AMR moved for summary judgment as to all claims on August 19, 2022. (ECF No. 36.)

## II.   <u>LEGAL STANDARD</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[3] A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. *Anderson v.*

---

[2] Plaintiff's Complaint states that he filed the EEOC complaint on December 4, 20*19*, but the Court assumes, given the timeline of events, that this was a typographical error.

[3] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Id.* The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, if the non-moving party fails to make a sufficient showing on an essential element of her case on which she has the burden of proof and submits "merely colorable evidence," then summary judgment is appropriate. *Anderson* 477 U.S. at 249–50; *Celotex*, 477 U.S. at 322–23. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). There must be evidence on which a jury reasonably could find for the non-moving party. *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

## III.   **DISCUSSION**

### A.   **Plaintiff's ADA Claim**

Plaintiff alleges, *inter alia*, that AMR refused to reasonably accommodate his disability and discriminated against him due to his disability in violation of the ADA. The ADA prohibits employment discrimination by a "covered entity . . . against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Employers of persons with disabilities are required to make reasonable accommodations to the known limitations for otherwise qualified individuals with disabilities and are prohibited from retaliating against an employee engaged in activities protected under the statute. *Id.* §§ 12112(b)(5)(A), 12203(b).

ADA employment discrimination claims are evaluated under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *See Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). Similarly, to establish a *prima facie* claim for failure to accommodate under the ADA, a plaintiff must satisfy the first three factors, but for the fourth factor, he must show by a preponderance of the evidence that his employer refused to make a reasonable accommodation. *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020); *Bost v. Nassau Cnty. Dep't of Social Servs.*, No. 22-2547, 2023 WL 6366053, at *2 (2d Cir. Sept. 29, 2023).

There is no dispute that Defendant is an entity subject to the ADA. Accordingly, the Court shall proceed to the issue of whether Plaintiff is disabled within the meaning of the ADA.

### 1.   "Disability" Under the ADA

An individual with a "disability" is defined as any person who (1) has a physical or mental impairment that "substantially limits" one or more "major life activities"; (2) has a "record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). "Disabilities are determined on a case by case basis." *Munck v. New Haven Sav. Bank*, 251 F. Supp. 2d 1078, 1082 (D. Conn. 2003). Plaintiff claims he satisfies the first and third definitions of being a person with a disability because his neck injury substantially limited the major life activities of "working" and "lifting" and because he was regarded as having such an impairment. (ECF No. 45 at 7-9; Compl. ¶ 41.)[4] The Court considers each of these arguments in turn.

### a.   Impairment "Substantially Limits" "Major Life Activity"

To meet the first ADA definition of disability, (1) a plaintiff must show that he suffers from a physical or mental impairment; (2) the plaintiff must identify the activity that is claimed to be impaired and establish that such activity constitutes a "major life" activity; and (3) the plaintiff must show that his physical or mental impairment "substantially limits" the identified "major life activity." *Birnbach v. Americares Found., Inc.*, No. 3:19-CV-01328 (VLB), 2021 WL 4263361, at *9 (D. Conn. Sept. 18, 2021) (citing *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002)). To determine whether a major life activity is substantially limited by an impairment, the Court considers, among other factors, "the nature

---

[4] Defendant contests that Plaintiff is disabled as defined by the ADA. (*See* ECF No. 38 at 12.)

**007**

and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005).

Generally, short term, temporary restrictions are not "substantially limiting" and do not render a person "disabled" under the ADA. *See De La Rosa v. Potter,* 427 F. App'x 28, 29 (2d Cir. 2011) (temporary back injury not substantially limiting); *Adams v. Citizens Advice Bureau,* 187 F.3d 315, 316–17 (2d Cir. 1999) (temporary neck, back, and knee injury lasting three and one-half months is not a disability within the meaning of the ADA); *Graaf v. North Shore Univ. Hosp.*, 1 F. Supp. 2d 318, 321 (S.D.N.Y. 1998) ("Courts within this circuit and the vast majority of courts elsewhere which have considered the question, have held that temporary disabilities do not trigger the protections of the ADA because individuals with temporary disabilities are not disabled persons within the meaning of the act."); *Davis v. Bowes*, No. 1:95-CV-4765, 1997 WL 655935, at *15 (S.D.N.Y. Oct. 20, 1997) (plaintiff who suffered back injury resulting in six-month absence from work not disabled under ADA where she recovered fully from the injury).

Here, Plaintiff alleges that after his shoulder injury, "the medical restriction that was preventing him from returning to work was that his doctor did not want him to do any heavy lifting." (Compl. ¶ 25.) He further asserts that "his injury caused [him] to be substantially limited in both the major life activities of 'lifting' and 'working,' thereby establishing that he was, at the time, a disabled person." (ECF No. 45 at 8 (emphasis added).) Plaintiff provides absolutely no medical records, evidence, or other information to support his claim that his neck/shoulder injury caused him to be *substantially* limited in the major life activities of lifting and working. *See Birnbach*, 2021 WL 4263361, at *11. Rather, his own testimony and the

8

**008**

record contradict Plaintiff's claim to substantial impairment and, instead demonstrate that his neck/shoulder injuries were only temporary conditions lasting for less than six months that did not affect his normal job duties once he returned from his leaves of absences.[5] *See* Pl. Dep., ECF No. 45-2, at 25:2-5 ("Q: And then at some point, did your condition improve, allowing you to come back? A: It did, and I went back to work for approximately two weeks or so."); *id.* at 26:7-15 ("Q: [D]o you recall what you did at work during those 10 days? A: It was back to my regular duties, scheduling and unit hour utilization, disciplinary stuff. My regular job. Q: Were you comfortable returning to work at that point? I mean, did you feel capable of returning to work? A: Yes."); Pl. Dep., ECF No. 38-1, at 47:3-10 ("Q: So did you see [Dr. Strugar] for your shoulder issue after the fall? A: […] I did see Dr. Strugar. And he wasn't concerned very much about my neck. Q: After the fall, you mean? A: Correct."); *id.* at 58:19-25 ("Q: Let's take [] May 2019 when you received that letter. Were [] you receiving medical treatment at that point? A: I don't remember what date I stopped seeing the [] shoulder surgeon, but [] it's fair to say it's possible."); *id.* at 59:9-16 ("Q: So taking [] a closer look here at this [May 5, 2019] medical note, it says, 'He'—meaning you—'does feel capable to return to work.' Do you agree with that assessment? A: Yes. Q: And did your doctor agree that you were capable to return? A: Yes."). Therefore, Plaintiff fails to satisfy the first definition of "disability" under the ADA.

Not only does Plaintiff fail to provide any evidence supporting his claim that his physical impairment substantially limited his ability to lift and work, "an employee alleging a

---

[5] In fact, Plaintiff's own language, that he was disabled "***at the time***," suggests that Plaintiff himself believes his injuries were temporary.

substantial limitation in the major life activity of working must show that the limitation affects the ability to perform a *class . . . or broad range of jobs.*" *Woolf*, 949 F.3d at 94 (alteration in original). Instead, Plaintiff solely claims that his "lifting restrictions . . . prevented him from otherwise returning to work[.]" (ECF No. 45 at 8.) Because Plaintiff does not attempt to show that his work-induced impairment substantially limited his ability to work in a class or broad range of jobs, no reasonable factfinder could conclude that Plaintiff has a "disability" within the meaning of the ADA.

### b.    "Regarded As" Having an Impairment

Pursuant to the ADA, a plaintiff will be regarded as having a qualifying impairment "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Plaintiff, for the first time in his opposition, claims that he is an individual with a disability because his "employer . . . regarded [him] as a person with a disability" and "had knowledge of the plaintiff's disability." (ECF No. 45 at 8-9.) Plaintiff raises no such theory of disability in his Complaint. "It is well settled that a litigant may not raise new claims not contained in the complaint in opposition to a motion for summary judgment." *Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 106 (S.D.N.Y. 2016); *see also Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012) ("The district court did not err in disregarding allegations Avillan raised for the first time in response to Potter's summary judgment motion."); *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) (holding that "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint"). Accordingly, the

Court declines to address Plaintiff's assertion that he meets the ADA's third definition of "disability."[6]

No reasonable factfinder can conclude that Plaintiff has established a *prima facie* case of discrimination under the ADA because he has not established that he was disabled as defined by the ADA. AMR is therefore entitled to summary judgment on Plaintiff's ADA claim.

### B.    Plaintiff's FMLA Interference Claim

The Court next grants summary judgment in favor of AMR on Plaintiff's claim that AMR interfered with the exercise of his rights under the FMLA.[7]

It is unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" rights under the FMLA. 29 U.S.C. § 2615(a)(1); *see* 29 C.F.R. § 825.220(a)(1) ("The FMLA prohibits interference with an employee's rights under the law, and with legal proceedings or inquiries relating to an employee's rights."). Thus, "an employee may seek relief when [his] employer has prevented or otherwise impeded [his] ability to exercise rights under the FMLA." *Peterson v. Town of Waterford*, No. 3:21-CV-332 (SVN),

---

[6] In any event, the ADA Amendments Act of 2008 (the "ADAAA") clarifies that no failure to accommodate claim can be made, as a matter of law, for an individual who is "regarded as" disabled, rather than who is actually disabled. In other words, the "regarded as" theory of disability is no longer actionable in the context of a failure to accommodate claim. *See* 42 U.S.C. § 12201(h) ("A covered entity under subchapter I, a public entity under subchapter II, and any person who owns, leases (or leases to), or operates a place of public accommodation under subchapter III, need not provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C) of this title solely under subparagraph (C) of such section."); *see also Powers v. USF Holland, Inc.*, 667 F.3d 815, 823 n.7 (7th Cir. 2011) ("[T]he ADAAA clarified that an individual 'regarded as' disabled (as opposed to actually disabled) is not entitled to a 'reasonable accommodation.'"). Consequently, Plaintiff's failure to accommodate claim fails to the extent Plaintiff alleges he was disabled under the "regarded as" theory.

[7] Plaintiff does not clearly state whether he is asserting an interference or retaliation claim under the FMLA in his Complaint, but he clarifies that it is the former in his opposition to AMR's motion for summary judgment. (*See* ECF No. 45 at 15.)

2023 WL 2742343, at *12 (D. Conn. Mar. 31, 2023). To prevail on an interference claim, a plaintiff must establish: (1) that he was an eligible employee under the FMLA; (2) that the defendant is an employer for purposes of the FMLA; (3) that he was entitled to leave under the FMLA; (4) that he gave notice to the defendant of his intention to take leave; and (5) that he was denied FMLA benefits to which he was entitled. *Graziadio v. Culinary Institute of America*, 817 F.3d 415, 424 (2d Cir. 2016).

Interference with the exercise of FMLA rights may include, for example, "refusing to authorize FMLA leave" and "discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). Moreover, an employer's failure to "reinstate an employee to a prior position or its equivalent following FMLA leave" can constitute such interference. *Wanamaker v. Town of Westport Bd. of Educ.*, 11 F. Supp. 3d 51, 69 (D. Conn. 2014). An employer may be held liable for an interference claim "even if [it] never subjectively intended to interfere with [the] plaintiff's FMLA rights." *Blackett v. Whole Foods Mkt. Grp., Inc.*, No. 3:14-CV-01896 (JAM), 2017 WL 1138126, at *6 (D. Conn. Mar. 27, 2017).

As a preliminary matter, Plaintiff does not contend that AMR denied any FMLA leave he requested. Indeed, Plaintiff expressly concedes that he received all the leave to which he was entitled when he took leave twice between 2018-2019. (Pl.'s 56(a) ¶¶ 25, 34.) Therefore, to prevail on his interference claim, Plaintiff must show that AMR interfered with his FMLA rights in some manner other than by denying him leave. *Wanamaker*, 11 F. Supp at 69. Here, Plaintiff claims that AMR interfered with the exercise of his FMLA rights by "refus[ing] to reinstate the plaintiff when he sought to return to his position as Senior Operations Supervisor." (ECF No. 45 at 16; *see also* Compl. ¶ 41.) In response, AMR contends that Plaintiff's interference claim fails because "he was not on FMLA leave when th[e] decision [not to hold

**012**

open his position] was made, he was provided all leave to which he was entitled (plus more), and his employment continued." (ECF No. 38 at 21.) The Court agrees with Defendant.

A claim for interference on the basis of a failure to reinstate is "not cognizable as a violation of FMLA, where [the plaintiff] remained on leave beyond the expiration of his FMLA leave." *Ridgeway v. Royal Bank of Scotland Grp.*, No. 3:11-CV-976 (VLB), 2012 WL 1033532, at *10 (D. Conn. Mar. 27, 2012); *see also Sabatino v. Flik Int'l Corp.*, 286 F. Supp. 2d 327, 336-37 (S.D.N.Y. 2003) (finding that where the plaintiff did not return to work at the end of her FMLA leave period, defendants had no obligation to return the plaintiff to her former job, let alone to any other job); *Dogmanits v. Capital Blue Cross,* 413 F. Supp. 2d 452, 462 (E.D. Pa. 2005) (holding that employees who exhaust the 12 weeks of leave provided by the FMLA stand to lose their entitlement to job restoration even if their employers provide additional, non-FMLA leave).

Plaintiff admits, and the record shows, that when his FMLA leave expired on February 15, 2019, which he received written notice of on February 22, 2019, he received and took extended leave under AMR's policies. (ECF No. 38-1 at 52:5-8, 57:5-22, 204, 206; Pl.'s 56(a) ¶¶ 34, 35, 43, 45.) Furthermore, there is no evidence that AMR affirmatively represented to him that this extended leave was FMLA leave. *See Sjoblom v. Jersey Shore Med. Ctr.,* No. 05-CV-1042, 2006 WL 1228709, at *4 (D.N.J. May 5, 2006) (dismissing FMLA claims where the employer provided actual notice as to when the FMLA leave expired). Plaintiff's right to reinstatement under the FMLA expired when his FMLA leave expired. *Wanamaker*, 11 F. Supp. 3d at 71. Thus, no reasonable factfinder can conclude that any alleged misconduct by AMR after February 15, 2019, the date Plaintiff's FMLA leave expired, constitutes

interference with Plaintiff's right to reinstatement. AMR is entitled to summary judgment on Plaintiff's FMLA interference claim.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, AMR's Motion for Summary Judgment (ECF No. 36) is **GRANTED**. Judgment is entered in the defendant's favor. As there are no remaining claims, the Clerk is directed to close this case.

**SO ORDERED.**

Hartford, Connecticut
February 23, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

**014**

### § 1291. Final decisions of district courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

**Source:**

June 25, 1948, ch. 646, 62 Stat. 929; Oct. 31, 1951, ch. 655, §48, 65 Stat. 726; Pub. L. 85-508, §12(e), July 7, 1958, 72 Stat. 348; Pub. L. 97-164, title I, §124, Apr. 2, 1982, 96 Stat. 36.

**Notes from the Office of Law Revision Counsel:**

**HISTORICAL AND REVISION NOTES**

Based on title 28, U.S.C., 1940 ed., §§225(a), 933(a)(1), and section 1356 of title 48, U.S.C., 1940 ed., Territories and Insular Possessions, and sections 61 and 62 of title 7 of the Canal Zone Code (Mar. 3, 1911, ch. 231, §128, 36 Stat. 1133; Aug. 24, 1912, ch. 390, §9, 37 Stat. 566; Jan. 28, 1915, ch. 22, §2, 38 Stat. 804; Feb. 7, 1925, ch. 150, 43 Stat. 813; Sept. 21, 1922, ch. 370, §3, 42 Stat. 1006; Feb. 13, 1925, ch. 229, §1, 43 Stat. 936; Jan. 31, 1928, ch. 14, §1, 45 Stat. 54; May 17, 1932, ch. 190, 47 Stat. 158; Feb. 16, 1933, ch. 91, §3, 47 Stat. 817; May 31, 1935, ch. 160, 49 Stat. 313; June 20, 1938, ch. 526, 52 Stat. 779; Aug. 2, 1946, ch. 753, §412(a)(1), 60 Stat. 844).

This section rephrases and simplifies paragraphs "First", "Second", and "Third" of section 225(a) of title 28, U.S.C., 1940 ed., which referred to each Territory and Possession separately, and to sections 61 and 62 of the Canal Zone Code, section 933(a)(1) of said title relating to jurisdiction of appeals in tort claims cases, and the provisions of section 1356 of title 48, U.S.C., 1940 ed., relating to jurisdiction of appeals from final judgments of the district court for the Canal Zone.

The district courts for the districts of Hawaii and Puerto Rico are embraced in the term "district courts of the United States." (See definitive section 451 of this title.)

Paragraph "Fourth" of section 225(a) of title 28, U.S.C., 1940 ed., is incorporated in section 1293 of this title.



## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ROBERT LAROSE,                              :
                                            :
    Plaintiff,                          :
                                            :
v.                                          :   CASE NO. 3:21-cv-00948 (VDO)
                                            :
AMERICAN MEDICAL RESPONSE                   :
OF CONNECTICUT, INC.,                       :
                                            :
    Defendant.                          :

## <u>JUDGMENT</u>

    This action having come before the Court for consideration of the Defendant's

motion for summary judgment before the Honorable Vernon D. Oliver, United States

District Judge; and

    The Court having considered the motion and the full record of the case including

applicable principles of law, and having granted the Defendant's motion on February 23,

2024; it is hereby,

    ORDERED, ADJUDGED, and DECREED that judgment be and is hereby

entered in favor of the Defendant.

    Dated at Hartford, Connecticut, this 26th day of February, 2024.

                       DINAH MILTON KINNEY, Clerk

                       By: <u>/s/ Jessalyn Samson</u>
                          Jessalyn Samson
                          Deputy Clerk

Entered on Docket: 2/26/2024

**016**

Words "Fifth. In the United States Court for China, in all cases" in said section 225(a) were omitted. (See reviser's note under section 411 of this title.)

Venue provisions of section 1356 of title 48, U.S.C., 1940 ed., are incorporated in section 1295 of this title.

Section 61 of title 7 of the Canal Zone Code is also incorporated in sections 1291 and 1295 of this title.

In addition to the jurisdiction conferred by this chapter, the courts of appeals also have appellate jurisdiction in proceedings under Title 11, Bankruptcy, and jurisdiction to review:

(1) Orders of the Secretary of the Treasury denying an application for, suspending, revoking, or annulling a basic permit under chapter 8 of title 27;

(2) Orders of the Interstate Commerce Commission, the Federal Communications Commission, the Civil Aeronautics Board, the Board of Governors of the Federal Reserve System and the Federal Trade Commission, based on violations of the antitrust laws or unfair or deceptive acts, methods, or practices in commerce;

(3) Orders of the Secretary of the Army under sections 504, 505 and 516 of title 33, U.S.C., 1940 ed., Navigation and Navigable Waters;

(4) Orders of the Civil Aeronautics Board under chapter 9 of title 49, except orders as to foreign air carriers which are subject to the President's approval;

(5) Orders under chapter 1 of title 7, refusing to designate boards of trade as contract markets or suspending or revoking such designations, or excluding persons from trading in contract markets;

(6) Orders of the Federal Power Commission under chapter 12 of title 16;

(7) Orders of the Federal Security Administrator under section 371(e) of title 21, in a case of actual controversy as to the validity of any such order, by any person adversely affected thereby;

(8) Orders of the Federal Power Commission under chapter 15B of title 15;

(9) Final orders of the National Labor Relations Board;

(10) Cease and desist orders under section 193 of title 7;

(11) Orders of the Securities and Exchange Commission;



(12) Orders to cease and desist from violating section 1599 of title 7;

(13) Wage orders of the Administrator of the Wage and Hour Division of the Department of Labor under section 208 of title 29;

(14) Orders under sections 81r and 1641 of title 19, U.S.C., 1940 ed., Customs Duties.

The courts of appeals also have jurisdiction to enforce:

(1) Orders of the Interstate Commerce Commission, the Federal Communications Commission, the Civil Aeronautics Board, the Board of Governors of the Federal Reserve System, and the Federal Trade Commission, based on violations of the antitrust laws or unfair or deceptive acts, methods, or practices in commerce;

(2) Final orders of the National Labor Relations Board;

(3) Orders to cease and desist from violating section 1599 of title 7.

The Court of Appeals for the District of Columbia also has jurisdiction to review orders of the Post Office Department under section 576 of title 39 relating to discriminations in sending second-class publications by freight; Maritime Commission orders denying transfer to foreign registry of vessels under subsidy contract; sugar allotment orders; decisions of the Federal Communications Commission granting or refusing applications for construction permits for radio stations, or for radio station licenses, or for renewal or modification of radio station licenses, or suspending any radio operator's license.

Changes were made in phraseology.

**EDITORIAL NOTES**

**AMENDMENTS**

**1982**-Pub. L. 97-164, §124, inserted "(other than the United States Court of Appeals for the Federal Circuit)" after "The court of appeals" and inserted provision that the jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

**1958**-Pub. L. 85-508 struck out provisions which gave courts of appeals jurisdiction of appeals from District Court for Territory of Alaska. See section 81A of this title which establishes a United States District Court for the State of Alaska.



**1951**-Act Oct. 31, 1951, inserted reference to District Court of Guam.

### STATUTORY NOTES AND RELATED SUBSIDIARIES

### EFFECTIVE DATE OF 1982 AMENDMENT

Amendment by Pub. L. 97-164 effective Oct. 1, 1982, see section 402 of Pub. L. 97-164, set out as a note under section 171 of this title.

### EFFECTIVE DATE OF 1958 AMENDMENT

Amendment by Pub. L. 85-508 effective Jan. 3, 1959, on admission of Alaska into the Union pursuant to Proc. No. 3269, Jan. 3, 1959, 24 F.R. 81, 73 Stat. c.16 as required by sections 1 and 8(c) of Pub. L. 85-508, see notes set out under section 81A of this title and preceding section 21 of Title 48, Territories and Insular Possessions.

### TERMINATION OF UNITED STATES DISTRICT COURT FOR THE DISTRICT OF THE CANAL ZONE

For termination of the United States District Court for the District of the Canal Zone at end of the "transition period", being the 30-month period beginning Oct. 1, 1979, and ending midnight Mar. 31, 1982, see Paragraph 5 of Article XI of the Panama Canal Treaty of 1977 and sections 2101 and 2201 to 2203 of Pub. L. 96-70, title II, Sept. 27, 1979, 93 Stat. 493, formerly classified to sections 3831 and 3841 to 3843, respectively, of Title 22, Foreign Relations and Intercourse.



### § 1331. Federal question

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**Source:**

June 25, 1948, ch. 646, 62 Stat. 930; Pub. L. 85-554, §1, July 25, 1958, 72 Stat. 415; Pub. L. 94-574, §2, Oct. 21, 1976, 90 Stat. 2721; Pub. L. 96-486, §2(a), Dec. 1, 1980, 94 Stat. 2369.

**Notes from the Office of Law Revision Counsel:**

**HISTORICAL AND REVISION NOTES**

Based on title 28, U.S.C., 1940 ed., §41(1) (Mar. 3, 1911, ch. 231, §24, par. 1, 36 Stat. 1091; May 14, 1934, ch. 283, §1, 48 Stat. 775; Aug. 21, 1937, ch. 726, §1, 50 Stat. 738; Apr. 20, 1940, ch. 117, 54 Stat. 143).

Jurisdiction of federal questions arising under other sections of this chapter is not dependent upon the amount in controversy. (See annotations under former section 41 of title 28, U.S.C.A., and 35 C.J.S., p. 833 et seq., §§30-43. See, also, reviser's note under section 1332 of this title.)

Words "wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs," were added to conform to rulings of the Supreme Court. See construction of provision relating to jurisdictional amount requirement in cases involving a Federal question in United States v. Sayward, 16 S.Ct. 371, 160 U.S. 493, 40 L.Ed. 508; Fishback v. Western Union Tel. Co., 16 S.Ct. 506, 161 U.S. 96, 40 L.Ed. 630; and Halt v. Indiana Manufacturing Co., 1900, 20 S.Ct. 272, 176 U.S. 68, 44 L.Ed. 374.

Words "all civil actions" were substituted for "all suits of a civil nature, at common law or in equity" to conform with Rule 2 of the Federal Rules of Civil Procedure.

Words "or treaties" were substituted for "or treaties made, or which shall be made under their authority," for purposes of brevity.

The remaining provisions of section 41(1) of title 28, U.S.C., 1940 ed., are incorporated in sections 1332, 1341, 1342, 1345, 1354, and 1359 of this title.

Changes were made in arrangement and phraseology.

**EDITORIAL NOTES**

**AMENDMENTS**



**020**

**1980**-Pub. L. 96-486 struck out "; amount in controversy; costs" in section catchline, struck out minimum amount in controversy requirement of $10,000 for original jurisdiction in federal question cases which necessitated striking the exception to such required minimum amount that authorized original jurisdiction in actions brought against the United States, any agency thereof, or any officer or employee thereof in an official capacity, struck out provision authorizing the district court except where express provision therefore was made in a federal statute to deny costs to a plaintiff and in fact impose such costs upon such plaintiff where plaintiff was adjudged to be entitled to recover less than the required amount in controversy, computed without regard to set-off or counterclaim and exclusive of interests and costs, and struck out existing subsection designations.

**1976**-Subsec. (a). Pub. L. 94-574 struck out $10,000 jurisdictional amount where action is brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

**1958**-Pub. L. 85-554 included costs in section catchline, designated existing provisions as subsec. (a), substituted "$10,000" for "$3,000", and added subsec. (b).

## STATUTORY NOTES AND RELATED SUBSIDIARIES

### EFFECTIVE DATE OF 1980 AMENDMENT; APPLICABILITY

Pub. L. 96-486, §4, Dec. 1, 1980, 94 Stat. 2370, provided: "This Act [amending this section and section 2072 of Title 15, Commerce and Trade, and enacting provisions set out as a note under section 1 of this title] shall apply to any civil action pending on the date of enactment of this Act [Dec. 1, 1980]."

### EFFECTIVE DATE OF 1958 AMENDMENT

Pub. L. 85-554, §3, July 25, 1958, 72 Stat. 415, provided that: "This Act [amending this section and sections 1332 and 1345 of this title] shall apply only in the case of actions commenced after the date of the enactment of this Act [July 25, 1958]."



### § 2614. Employment and benefits protection

### (a) Restoration to position

### (1) In general

Except as provided in subsection (b), any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave-

(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or

(B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

### (2) Loss of benefits

The taking of leave under section 2612 of this title shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced.

### (3) Limitations

Nothing in this section shall be construed to entitle any restored employee to-

(A) the accrual of any seniority or employment benefits during any period of leave; or

(B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.

### (4) Certification

As a condition of restoration under paragraph (1) for an employee who has taken leave under section 2612(a)(1)(D) of this title, the employer may have a uniformly applied practice or policy that requires each such employee to receive certification from the health care provider of the employee that the employee is able to resume work, except that nothing in this paragraph shall supersede a valid State or local law or a collective bargaining agreement that governs the return to work of such employees.

### (5) Construction



Nothing in this subsection shall be construed to prohibit an employer from requiring an employee on leave under section 2612 of this title to report periodically to the employer on the status and intention of the employee to return to work.

### (b) Exemption concerning certain highly compensated employees

### (1) Denial of restoration

An employer may deny restoration under subsection (a) to any eligible employee described in paragraph (2) if-

(A) such denial is necessary to prevent substantial and grievous economic injury to the operations of the employer;

(B) the employer notifies the employee of the intent of the employer to deny restoration on such basis at the time the employer determines that such injury would occur; and

(C) in any case in which the leave has commenced, the employee elects not to return to employment after receiving such notice.

### (2) Affected employees

An eligible employee described in paragraph (1) is a salaried eligible employee who is among the highest paid 10 percent of the employees employed by the employer within 75 miles of the facility at which the employee is employed.

### (c) Maintenance of health benefits

### (1) Coverage

Except as provided in paragraph (2), during any period that an eligible employee takes leave under section 2612 of this title, the employer shall maintain coverage under any "group health plan" (as defined in section 5000(b)(1) of title 26) for the duration of such leave at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of such leave.

### (2) Failure to return from leave

The employer may recover the premium that the employer paid for maintaining coverage for the employee under such group health plan during any period of unpaid leave under section 2612 of this title if-



(A) the employee fails to return from leave under section 2612 of this title after the period of leave to which the employee is entitled has expired; and

(B) the employee fails to return to work for a reason other than-

(i) the continuation, recurrence, or onset of a serious health condition that entitles the employee to leave under subparagraph (C) or (D) of section 2612(a)(1) of this title or under section 2612(a)(3) of this title; or

(ii) other circumstances beyond the control of the employee.

**(3) Certification**

**(A) Issuance**

An employer may require that a claim that an employee is unable to return to work because of the continuation, recurrence, or onset of the serious health condition described in paragraph (2)(B)(i) be supported by-

(i) a certification issued by the health care provider of the son, daughter, spouse, or parent of the employee, as appropriate, in the case of an employee unable to return to work because of a condition specified in section 2612(a)(1)(C) of this title;

(ii) a certification issued by the health care provider of the eligible employee, in the case of an employee unable to return to work because of a condition specified in section 2612(a)(1)(D) of this title; or

(iii) a certification issued by the health care provider of the servicemember being cared for by the employee, in the case of an employee unable to return to work because of a condition specified in section 2612(a)(3) of this title.

**(B) Copy**

The employee shall provide, in a timely manner, a copy of such certification to the employer.

**(C) Sufficiency of certification**

**(i) Leave due to serious health condition of employee**

The certification described in subparagraph (A)(ii) shall be sufficient if the certification states that a serious health condition prevented the employee from being able to perform the functions of the position of the employee on the date that the leave of the employee expired.

**(ii) Leave due to serious health condition of family member**



The certification described in subparagraph (A)(i) shall be sufficient if the certification states that the employee is needed to care for the son, daughter, spouse, or parent who has a serious health condition on the date that the leave of the employee expired.

**Source:**

Pub. L. 103-3, title I, §104, Feb. 5, 1993, 107 Stat. 12; Pub. L. 110-181, div. A, title V, §585(a)(3)(F), Jan. 28, 2008, 122 Stat. 131.

**Notes from the Office of Law Revision Counsel:**

**EDITORIAL NOTES**

**AMENDMENTS**

**2008**-Subsec. (c)(2)(B)(i). Pub. L. 110-181, §585(a)(3)(F)(i), inserted "or under section 2612(a)(3) of this title" before semicolon.

Subsec. (c)(3)(A)(iii). Pub. L. 110-181, §585(a)(3)(F)(ii), added cl. (iii).

**STATUTORY NOTES AND RELATED SUBSIDIARIES**

**EFFECTIVE DATE**

Section effective 6 months after Feb. 5, 1993, except that, in the case of collective bargaining agreements in effect on that effective date, section applicable on the earlier of (1) the date of termination of such agreement, or (2) the date that occurs 12 months after Feb. 5, 1993, see section 405(b) of Pub. L. 103-3 set out as a note under section 2601 of this title.



### § 2615. Prohibited acts

### (a) Interference with rights

### (1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

### (2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

### (b) Interference with proceedings or inquiries

It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual-

(1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter;

(2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or

(3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter.

### Source:

Pub. L. 103-3, title I, §105, Feb. 5, 1993, 107 Stat. 14.

### Notes from the Office of Law Revision Counsel:

### STATUTORY NOTES AND RELATED SUBSIDIARIES

### EFFECTIVE DATE

Section effective 6 months after Feb. 5, 1993, except that, in the case of collective bargaining agreements in effect on that effective date, section applicable on the earlier of (1) the date of termination of such agreement, or (2) the date that occurs 12 months after Feb. 5, 1993, see section 405(b) of Pub. L. 103-3 set out as a note under section 2601 of this title.



### § 825.300. Employer notice requirements

(a) *General notice.*

(1) Every employer covered by the FMLA is required to post and keep posted on its premises, in conspicuous places where employees are employed, a notice explaining the Act's provisions and providing information concerning the procedures for filing complaints of violations of the Act with the Wage and Hour Division. The notice must be posted prominently where it can be readily seen by employees and applicants for employment. The poster and the text must be large enough to be easily read and contain fully legible text. Electronic posting is sufficient to meet this posting requirement as long as it otherwise meets the requirements of this section. An employer that willfully violates the posting requirement may be assessed a civil money penalty by the Wage and Hour Division not to exceed $211 for each separate offense.

(2) Covered employers must post this general notice even if no employees are eligible for FMLA leave.

(3) If an FMLA-covered employer has any eligible employees, it shall also provide this general notice to each employee by including the notice in employee handbooks or other written guidance to employees concerning employee benefits or leave rights, if such written materials exist, or by distributing a copy of the general notice to each new employee upon hiring. In either case, distribution may be accomplished electronically.

(4) To meet the requirements of paragraph (a)(3) of this section, employers may duplicate the text of the Department's prototype notice (WHD Publication 1420) or may use another format so long as the information provided includes, at a minimum, all of the information contained in that notice. Where an employer's workforce is comprised of a significant portion of workers who are not literate in English, the employer shall provide the general notice in a language in which the employees are literate. Prototypes are available from the nearest office of the Wage and Hour Division or on the Internet at *www.dol.gov/whd* . Employers furnishing FMLA notices to sensory-impaired individuals must also comply with all applicable requirements under Federal or State law.

(b) *Eligibility notice.*

(1) When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances. *See* §825.110 for definition of an eligible employee and §825.801 for special



hours of service eligibility requirements for airline flight crews. Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period. *See*§§825.127(c) and 825.200(b). All FMLA absences for the same qualifying reason are considered a single leave and employee eligibility as to that reason for leave does not change during the applicable 12-month period.

(2) The eligibility notice must state whether the employee is eligible for FMLA leave as defined in §825.110. If the employee is not eligible for FMLA leave, the notice must state at least one reason why the employee is not eligible, including as applicable the number of months the employee has been employed by the employer, the hours of service with the employer during the 12-month period, and whether the employee is employed at a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite. Notification of eligibility may be oral or in writing; employers may use optional Form WH-381 (Notice of Eligibility and Rights and Responsibility) to provide such notification to employees. Prototypes are available from the nearest office of the Wage and Hour Division or on the Internet at *www.dol.gov/whd* . The employer is obligated to translate this notice in any situation in which it is obligated to do so in §825.300(a)(4).

(3) If, at the time an employee provides notice of a subsequent need for FMLA leave during the applicable 12-month period due to a different FMLA-qualifying reason, and the employee's eligibility status has not changed, no additional eligibility notice is required. If, however, the employee's eligibility status has changed (e.g., if the employee has not met the hours of service requirement in the 12 months preceding the commencement of leave for the subsequent qualifying reason or the size of the workforce at the worksite has dropped below 50 employees), the employer must notify the employee of the change in eligibility status within five business days, absent extenuating circumstances.

(c) *Rights and responsibilities notice.*

(1) Employers shall provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations. The employer is obligated to translate this notice in any situation in which it is obligated to do so in §825.300(a)(4). This notice shall be provided to the employee each time the eligibility notice is provided pursuant to paragraph (b) of this section. If leave has already begun, the notice should be mailed to the employee's address of record. Such specific notice must include, as appropriate:



(i) That the leave may be designated and counted against the employee's annual FMLA leave entitlement if qualifying (*see* §§825.300(c) and 825.301) and the applicable 12-month period for FMLA entitlement (*see* §§825.127(c), 825.200(b), (f), and (g));

(ii) Any requirements for the employee to furnish certification of a serious health condition, serious injury or illness, or qualifying exigency arising out of covered active duty or call to covered active duty status, and the consequences of failing to do so (*see* §§825.305, 825.309, 825.310, 825.313);

(iii) The employee's right to substitute paid leave, whether the employer will require the substitution of paid leave, the conditions related to any substitution, and the employee's entitlement to take unpaid FMLA leave if the employee does not meet the conditions for paid leave (*see* §825.207);

(iv) Any requirement for the employee to make any premium payments to maintain health benefits and the arrangements for making such payments (*see* §825.210), and the possible consequences of failure to make such payments on a timely basis (*i.e.,* the circumstances under which coverage may lapse);

(v) The employee's status as a key employee and the potential consequence that restoration may be denied following FMLA leave, explaining the conditions required for such denial (*see* §825.218);

(vi) The employee's rights to maintenance of benefits during the FMLA leave and restoration to the same or an equivalent job upon return from FMLA leave (*see* §§825.214 and 825.604); and

(vii) The employee's potential liability for payment of health insurance premiums paid by the employer during the employee's unpaid FMLA leave if the employee fails to return to work after taking FMLA leave (*see* §825.213).

(2) The notice of rights and responsibilities may include other information-e.g., whether the employer will require periodic reports of the employee's status and intent to return to work-but is not required to do so.

(3) The notice of rights and responsibilities may be accompanied by any required certification form.

(4) If the specific information provided by the notice of rights and responsibilities changes, the employer shall, within five business days of receipt of the employee's first notice of need for leave subsequent to any change, provide written notice referencing the prior notice and setting forth any of the information in the notice of rights and responsibilities that has changed. For example, if the initial leave period was paid leave and the



subsequent leave period would be unpaid leave, the employer may need to give notice of the arrangements for making premium payments.

(5) Employers are also expected to responsively answer questions from employees concerning their rights and responsibilities under the FMLA.

(6) A prototype notice of rights and responsibilities may be obtained from local offices of the Wage and Hour Division or from the Internet at *www.dol.gov/whd* . Employers may adapt the prototype notice as appropriate to meet these notice requirements. The notice of rights and responsibilities may be distributed electronically so long as it otherwise meets the requirements of this section.

(d) *Designation notice.*

(1) The employer is responsible in all circumstances for designating leave as FMLA-qualifying, and for giving notice of the designation to the employee as provided in this section. When the employer has enough information to determine whether the leave is being taken for a FMLA-qualifying reason (e.g., after receiving a certification), the employer must notify the employee whether the leave will be designated and will be counted as FMLA leave within five business days absent extenuating circumstances. Only one notice of designation is required for each FMLA-qualifying reason per applicable 12-month period, regardless of whether the leave taken due to the qualifying reason will be a continuous block of leave or intermittent or reduced schedule leave. If the employer determines that the leave will not be designated as FMLA-qualifying (e.g., if the leave is not for a reason covered by FMLA or the FMLA leave entitlement has been exhausted), the employer must notify the employee of that determination. If the employer requires paid leave to be substituted for unpaid FMLA leave, or that paid leave taken under an existing leave plan be counted as FMLA leave, the employer must inform the employee of this designation at the time of designating the FMLA leave.

(2) If the employer has sufficient information to designate the leave as FMLA leave immediately after receiving notice of the employee's need for leave, the employer may provide the employee with the designation notice at that time.

(3) If the employer will require the employee to present a fitness-for-duty certification to be restored to employment, the employer must provide notice of such requirement with the designation notice. If the employer will require that the fitness-for-duty certification address the employee's ability to perform the essential functions of the employee's position, the employer must so indicate in the designation notice, and must include a list of the



essential functions of the employee's position. *See* §825.312. If the employer handbook or other written documents (if any) describing the employer's leave policies clearly provide that a fitness-for-duty certification will be required in specific circumstances (e.g., by stating that fitness-for-duty certification will be required in all cases of back injuries for employees in a certain occupation), the employer is not required to provide written notice of the requirement with the designation notice, but must provide oral notice no later than with the designation notice.

(4) The designation notice must be in writing. A prototype designation notice may be obtained from local offices of the Wage and Hour Division or from the Internet at *www.dol.gov/whd* . If the leave is not designated as FMLA leave because it does not meet the requirements of the Act, the notice to the employee that the leave is not designated as FMLA leave may be in the form of a simple written statement.

(5) If the information provided by the employer to the employee in the designation notice changes (e.g., the employee exhausts the FMLA leave entitlement), the employer shall provide, within five business days of receipt of the employee's first notice of need for leave subsequent to any change, written notice of the change.

(6) The employer must notify the employee of the amount of leave counted against the employee's FMLA leave entitlement. If the amount of leave needed is known at the time the employer designates the leave as FMLA-qualifying, the employer must notify the employee of the number of hours, days, or weeks that will be counted against the employee's FMLA leave entitlement in the designation notice. If it is not possible to provide the hours, days, or weeks that will be counted against the employee's FMLA leave entitlement (such as in the case of unforeseeable intermittent leave), then the employer must provide notice of the amount of leave counted against the employee's FMLA leave entitlement upon the request by the employee, but no more often than once in a 30-day period and only if leave was taken in that period. The notice of the amount of leave counted against the employee's FMLA entitlement may be oral or in writing. If such notice is oral, it shall be confirmed in writing, no later than the following payday (unless the payday is less than one week after the oral notice, in which case the notice must be no later than the subsequent payday). Such written notice may be in any form, including a notation on the employee's pay stub.

(e) *Consequences of failing to provide notice.* Failure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights. An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the



violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered *See* §825.400(c).

**Source:**

78 FR 8902, Feb. 6, 2013, as amended at at 81 FR 43452, July 1, 2016; 82 FR 5382, Jan. 18, 2017; 82 FR 14, Jan. 2, 2018; 84 FR 219, Jan. 23, 2019; 85 FR 2298, Jan. 15, 2020; 86 FR 2969, Jan. 14, 2021; 87 FR 2335, Jan. 14, 2022; 88 FR 2217, Jan. 13, 2023

**History:**

81 FR 43452, 8/1/2016; 82 FR 5382, 1/18/2017; 82 FR 14, 1/2/2018; 84 FR 219, 1/23/2019; 85 FR 2298, 1/15/2020; 86 FR 2969, 1/14/2021; 87 FR 2335, 1/14/2022; 88 FR 2217, 1/13/2023; 89 FR 1817, 1/15/2024



### § 825.312. Fitness-for-duty certification

(a) As a condition of restoring an employee whose FMLA leave was occasioned by the employee's own serious health condition that made the employee unable to perform the employee's job, an employer may have a uniformly-applied policy or practice that requires all similarly-situated employees (*i.e.,* same occupation, same serious health condition) who take leave for such conditions to obtain and present certification from the employee's health care provider that the employee is able to resume work. The employee has the same obligations to participate and cooperate (including providing a complete and sufficient certification or providing sufficient authorization to the health care provider to provide the information directly to the employer) in the fitness-for-duty certification process as in the initial certification process. *See* §825.305(d).

(b) An employer may seek a fitness-for-duty certification only with regard to the particular health condition that caused the employee's need for FMLA leave. The certification from the employee's health care provider must certify that the employee is able to resume work. Additionally, an employer may require that the certification specifically address the employee's ability to perform the essential functions of the employee's job. In order to require such a certification, an employer must provide an employee with a list of the essential functions of the employee's job no later than with the designation notice required by §825.300(d), and must indicate in the designation notice that the certification must address the employee's ability to perform those essential functions. If the employer satisfies these requirements, the employee's health care provider must certify that the employee can perform the identified essential functions of his or her job. Following the procedures set forth in §825.307(a), the employer may contact the employee's health care provider for purposes of clarifying and authenticating the fitness-for-duty certification. Clarification may be requested only for the serious health condition for which FMLA leave was taken. The employer may not delay the employee's return to work while contact with the health care provider is being made. No second or third opinions on a fitness-for-duty certification may be required.

(c) The cost of the certification shall be borne by the employee, and the employee is not entitled to be paid for the time or travel costs spent in acquiring the certification.

(d) The designation notice required in §825.300(d) shall advise the employee if the employer will require a fitness-for-duty certification to return to work and whether that fitness-for-duty certification must address the employee's ability to perform the essential functions of the employee's job.



(e) An employer may delay restoration to employment until an employee submits a required fitness-for-duty certification unless the employer has failed to provide the notice required in paragraph (d) of this section. If an employer provides the notice required, an employee who does not provide a fitness-for-duty certification or request additional FMLA leave is no longer entitled to reinstatement under the FMLA. *See* §825.313(d).

(f) An employer is not entitled to a certification of fitness to return to duty for each absence taken on an intermittent or reduced leave schedule. However, an employer is entitled to a certification of fitness to return to duty for such absences up to once every 30 days if reasonable safety concerns exist regarding the employee's ability to perform his or her duties, based on the serious health condition for which the employee took such leave. If an employer chooses to require a fitness-for-duty certification under such circumstances, the employer shall inform the employee at the same time it issues the designation notice that for each subsequent instance of intermittent or reduced schedule leave, the employee will be required to submit a fitness-for-duty certification unless one has already been submitted within the past 30 days. Alternatively, an employer can set a different interval for requiring a fitness-for-duty certification as long as it does not exceed once every 30 days and as long as the employer advises the employee of the requirement in advance of the employee taking the intermittent or reduced schedule leave. The employer may not terminate the employment of the employee while awaiting such a certification of fitness to return to duty for an intermittent or reduced schedule leave absence. *Reasonable safety concerns* means a reasonable belief of significant risk of harm to the individual employee or others. In determining whether reasonable safety concerns exist, an employer should consider the nature and severity of the potential harm and the likelihood that potential harm will occur.

(g) If State or local law or the terms of a collective bargaining agreement govern an employee's return to work, those provisions shall be applied.

(h) Requirements under the Americans with Disabilities Act (ADA), as amended, apply. After an employee returns from FMLA leave, the ADA requires any medical examination at an employer's expense by the employer's health care provider be job-related and consistent with business necessity. For example, an attorney could not be required to submit to a medical examination or inquiry just because her leg had been amputated. The essential functions of an attorney's job do not require use of both legs; therefore such an inquiry would not be job related. An employer may require a warehouse laborer, whose back impairment affects the ability to lift, to be examined by an orthopedist, but may not require this employee to submit to an HIV test where the test is not related to either the essential functions of his or her job or to his/her impairment. If an employee's serious health



condition may also be a disability within the meaning of the ADA, the FMLA does not prevent the employer from following the procedures for requesting medical information under the ADA.



**035**